

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

RICHARD J. DYNAS,

Plaintiff,

v.

DELAWARE NORTH COMPANIES INCORPORATED;

UNILAND DEVELOPMENT COMPANY;

AREAS USA, INC.;

JEREMY JACOBS SR.;

LOUIS JACOBS;

JERRY JACOBS JR.;

CHARLIE JACOBS;

CARLOS BERNAL;

RICHARD SCHNEIDER;

and JOHN/JANE DOES 1–20,

Defendants.

Case No.: 1:25-cv-00606

MASTER AMENDED COMPLAINT

(JURY TRIAL DEMANDED)

Plaintiff Richard J. Dynas ("Plaintiff"), proceeding pro se, files this Master Amended Complaint against Defendants pursuant to Federal Rule of Civil Procedure 15(a). Plaintiff incorporates all prior allegations and exhibits by reference and amends to strengthen the claims, particularly

under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. This amendment addresses the elements of civil RICO claims under § 1962(c) and (d), including the existence of an enterprise, a pattern of racketeering activity (with at least two predicate acts), conduct of the enterprise's affairs through that pattern, and injury to Plaintiff's business or property proximately caused by the violation. Plaintiff alleges the following based on personal knowledge, documents in his possession, and information and belief derived from reliable sources.

## I. INTRODUCTION

1. Plaintiff brings this action for violations of federal and state laws arising from his protected whistleblower disclosures regarding Defendants' corporate misconduct, including systemic data security failures, falsified compliance reporting, misuse of public funds, workplace harassment, defamation, and retaliatory termination.

2. Defendants, acting through a RICO enterprise, engaged in a deliberate, coordinated pattern of retaliation, harassment, defamation, concealment, and destruction of evidence to suppress Plaintiff's disclosures and preserve eligibility for over $25 million in public subsidies and government contracts.

3. On July 10, 2025, Defendant Delaware North Companies Incorporated ("Delaware North") sold its Travel Hospitality Services ("THS") division to Defendant Areas USA, Inc. ("Areas USA") for $500 million—a gross undervaluation given THS's annual revenue exceeding $500 million. This sale eliminated approximately 4,000 jobs, erased IT evidence repositories (including SharePoint archives and ServiceNow logs), and

removed key witnesses, obstructing regulators and this Court's examination of the enterprise's misconduct.

4. As a direct result, Plaintiff suffered concrete injuries to his business and property, including lost wages and benefits exceeding $2 million, diminished career opportunities, and reputational harm leading to pecuniary losses.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), including claims under 18 U.S.C. § 1964(c) (civil RICO), 18 U.S.C. § 1030(g) (Computer Fraud and Abuse Act), 18 U.S.C. § 2707 (Stored Communications Act), 31 U.S.C. § 3730 (False Claims Act), 42 U.S.C. § 12188 (Americans with Disabilities Act), and 29 U.S.C. § 660(c) and 18 U.S.C. § 1514A (federal whistleblower protections). Supplemental jurisdiction over state claims exists under 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events occurred in this District, including Plaintiff's employment, the misconduct, and the THS sale's impacts.

## III. PARTIES

7. Plaintiff Richard J. Dynas is a resident of Derby, New York, and was Delaware North's sole Incident Manager from 2019 until his retaliatory termination on April 17, 2025.

8. Defendant Delaware North Companies Incorporated is a Delaware corporation headquartered at 250 Delaware Avenue, Buffalo, New York, engaged in hospitality and concessions affecting interstate commerce.

9. Defendant Uniland Development Company is a New York corporation headquartered at 100 Corporate Parkway, Amherst, New York, involved in real estate and tied to Delaware North through subsidies and leases.

10. Defendant Areas USA, Inc. is a Florida corporation headquartered at 5301 Blue Lagoon Drive, Miami, Florida, and successor to Delaware North's THS division.

11. Defendants Jeremy Jacobs Sr., Louis Jacobs, Jerry Jacobs Jr., and Charlie Jacobs (collectively, "Jacobs Family") are officers, directors, and controlling owners of Delaware North, residing in or conducting business from New York and Florida. They directed the enterprise's activities.

12. Defendants Carlos Bernal (CEO of Areas USA) and Richard Schneider (CDO of Areas USA) are former Delaware North executives residing in Florida who orchestrated the THS sale.

13. John/Jane Does 1–20 are unidentified individuals or entities involved in the misconduct.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Role and Protected Activities

14. Plaintiff maintained an above-average performance record at Delaware North, with strong reviews and no discipline prior to his whistleblowing.

15. As Incident Manager, Plaintiff reported security, compliance, and infrastructure failures to leadership and regulators, consistent with Delaware North's Ethics Code mandating such disclosures.

16. From 2020 to 2025, Plaintiff escalated issues to Kevin Moore (IT Manager), Jocelyn Bustamante (IT Director), Dennis Milewski (IT VP), Tim McEvoy (Legal), Monica Simoneau (HR), Bill Vertalino (HR/Ethics), and the Ethics hotline. Examples include: (a) systemic data exposures affecting PCI DSS compliance (emails dated March 15, 2023, and February 10, 2025); (b) falsified outage metrics (Teams messages from Bustamante on January 5, 2025, directing Plaintiff to "bury" outages); and (c) unreported vulnerabilities impacting public subsidies (hotline report April 1, 2025).

17. On April 11, 2025, Plaintiff reported critical vulnerabilities to McEvoy and Simoneau via email. Within one hour, he was suspended in retaliation.

## B. Retaliation and Harassment

18. Defendants subjected Plaintiff to harassment, including: (a) unfounded criticism by Simoneau, Bustamante, and Milewski; (b) hiring a younger replacement without process and forcing Plaintiff to train him (March 2025); (c) assigning Plaintiff 24/7 shifts while the replacement worked standard hours; (d) exclusion from meetings; (e) threats by Bustamante and Milewski (e.g., "this will end badly" in April 2025 Teams call); and (f) rumors labeling Plaintiff "disruptive" (internal emails, Exhibit U audio).

19. On April 17, 2025, Delaware North terminated Plaintiff, offering inadequate severance in exchange for releasing claims. Plaintiff refused and demanded $5 million to resolve whistleblower issues.

20. Days later (April 20, 2025), Defendants falsely reported Plaintiff for "extortion" to the FBI, leading to agents visiting his home—no charges filed. This was witness intimidation.

21. Defendants pressured Plaintiff into a biased investigation without counsel (Simoneau email, April 15, 2025).

## C. The RICO Enterprise

22. Defendants formed an "association-in-fact" enterprise under 18 U.S.C. § 1961(4), consisting of Delaware North, the Jacobs Family, Uniland, Areas USA, Bernal, Schneider, and Does 1–20. The enterprise: (a) had a common purpose—to fraudulently obtain/retain public subsidies, conceal misconduct, and retaliate against whistleblowers; (b) featured relationships (e.g., Jacobs Family control over Delaware North/Uniland, Bernal/Schneider's migration to Areas USA); and (c) exhibited longevity (ongoing since at least 2020, with historical Jacobs involvement in racketeering probes from the 1970s).

23. The enterprise affected interstate commerce through mail, wires, and operations across states (e.g., subsidies from New York agencies, THS sale to Florida entity).

24. Each Defendant participated in conducting the enterprise's affairs: Jacobs Family approved policies; Delaware North/Uniland falsified reports; Areas USA/Bernal/Schneider executed the concealment sale.

## D. Pattern of Racketeering Activity

25. The enterprise engaged in a pattern of racketeering under 18 U.S.C. § 1961(5), with at least two related predicate acts from 2020–2025, showing relatedness (common purpose of fraud/concealment) and continuity (closed-ended over 5+ years; open-ended threat via ongoing subsidy retention).

26. Predicate Acts (detailed with particularity per Fed. R. Civ. P. 9(b) where applicable):

## Exhibit ABA

| Predicate Act | Description | Date(s) | Participants | Means | Relation to Enterprise |
|---|---|---|---|---|---|
| Wire Fraud (18 U.S.C. § 1343) | Transmission of falsified job-retention/compliance data to Empire State Development/ECIDA to retain subsidies. | 2021–2025 (e.g., emails March 2022, January 2024) | Delaware North (Milewski/Bustamante), Jacobs Family (approval) | Interstate emails/wires | Concealed failures to fraudulently retain $25M+ subsidies. |
| Mail Fraud (18 U.S.C. § 1341) | Mailing false PCI DSS certifications to regulators/subsidy agencies. | 2022–2025 (e.g., mailed reports April 2023) | Delaware North (McEvoy), Uniland | U.S. Mail | Preserved subsidy eligibility by hiding vulnerabilities. |
| Wire Fraud (§ 1343) | Emails directing Plaintiff to falsify outage metrics (e.g., "bury" Milwaukee outage). | 2023–2025 (e.g., Bustamante email January 5, 2025) | Bustamante, Milewski | Emails/Teams | Masked issues for regulatory reporting. |
| Wire Fraud (§ 1343) | Emails coordinating undervalued THS sale to erase evidence. | June–July 2025 (e.g., Bernal/Schneider emails June 15, 2025) | Bernal, Schneider, Jacobs Family | Emails | Obstructed justice by transferring/deleting repositories. |
| Obstruction of Justice (18 U.S.C. § 1503) | False FBI "extortion" report to intimidate Plaintiff. | 20-Apr-25 | Delaware North (Simoneau/McEvoy), Jacobs Family | Phone/wires to FBI | Suppressed whistleblowing/cooperation. |
| Witness Tampering (18 U.S.C. § 1512) | Destruction/concealment of evidence (Jira data 2010–2022; SharePoint/ServiceNow post-sale). | 2022–July 2025 | Delaware North, Arenas USA | Digital deletion/transfer | Impaired Plaintiff's claims and investigations. |
| Retaliation Against Whistleblower (18 U.S.C. § 1513(e)) | Termination and harassment for disclosures impacting federal funds. | April 11–17, 2025 | All Defendants | Internal actions | Suppressed reports on subsidy fraud. |

27. These acts were related (same participants, methods, purpose: enrich enterprise via fraud/concealment) and continuous (multiple acts over years, threat of repetition in subsidy schemes).

### E. Injury and Causation

28. Defendants' RICO violations proximately caused concrete injuries to Plaintiff's business/property: (a) lost wages/benefits ($2M+ from termination); (b) reputational harm reducing employability (pecuniary loss via diminished opportunities); and (c) economic strain from harassment (e.g., medical costs for PTSD/migraines). These were foreseeable and direct results of the pattern.

### F. Other Misconduct

29. The THS sale created conflicts (Bernal/Schneider benefited) and jeopardized subsidies (e.g., $4.1M ECIDA abatements) without clawback.

30. Leadership knew of issues (escalations 2020–2025) and directed falsifications (e.g., classifying sites "online" with minimal function).

31. Defamation: False "extortion" statements to FBI and others (e.g., termination letter circulated April 17, 2025; emails by Areas USA's Billy Marsh).

32. Spoliation: Destruction of evidence warrants adverse inference sanctions.

## V. CAUSES OF ACTION

### Count I: RICO Violation (18 U.S.C. § 1962(c))

33. Plaintiff realleges ¶¶ 1–32. Defendants conducted the enterprise's affairs through the pattern of racketeering, injuring Plaintiff's business/property.

**Count II: RICO Conspiracy (18 U.S.C. § 1962(d))**

34. Defendants conspired to violate § 1962(c), agreeing to the pattern (e.g., via board approvals, lobbying, THS sale).

**Count III: Whistleblower Retaliation (NY Labor Law § 740; 18 U.S.C. § 1514A)**

35. Defendants retaliated for protected disclosures.

**Count IV: ADA Retaliation (42 U.S.C. § 12112)**

36. Defendants denied accommodations for PTSD/anxiety and targeted Plaintiff.

**Count V: Defamation (New York Common Law)**

37. False statements damaged Plaintiff's reputation.

**Count VI: Fraudulent Conveyance (New York Debtor & Creditor Law § 273 et seq.)**

38. THS sale concealed assets/evidence to hinder claims.

**Count VII: Aiding and Abetting Fraud (New York Common Law)**

39. Areas USA, Uniland, and Jacobs Family assisted the scheme.

**Count VIII: Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

40. Unauthorized access/manipulation of systems.

**Count IX: Stored Communications Act (18 U.S.C. § 2701)**

41. Unauthorized access to communications.

**Count X: False Claims Act (31 U.S.C. § 3729)**

42. Fraudulent certifications for subsidies/PPP loans.

**Count XI: Obstruction of Justice (18 U.S.C. § 1503)**

43. FBI intimidation, spoliation, lobbying to avoid scrutiny.

**Count XII: Intentional Infliction of Emotional Distress (New York Common Law)**

44. Misconduct caused severe distress (PTSD, etc.).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands:

(a) Treble damages under RICO/FCA exceeding $100 million;

(b) Compensatory damages for losses ($2M+ wages, reputational harm);

(c) Punitive damages;

(d) Injunctive relief (rescind THS sale, claw back subsidies, preserve evidence);

(e) Adverse inference sanctions for spoliation;

(f) Attorneys' fees/costs;

(g) Jury trial; and

(h) Other relief as just.

Dated: July 28, 2025

/s/ Richard J. Dynas

Richard J. Dynas, Pro Se

1976 Aquarius Road

Derby, NY 14047

Email: richard@richarddynas.com

Phone: (716) 627-5334